Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Gustavo Reyes-Ceja. Your Honors, for purposes of assessing recency points under Section 4A.1.1b, whereas here an alien has been in continuous custody and thus unable to leave the country, the continuing offense being found in the United States has ended. And thus, here, Mr. Reyes had already been found in the United States at the time he was sentenced for his underlying state offense. I think you're saying he's found in as soon as any law enforcement finds him, but I think our case law says he's not found in until the Immigration Naturalization Service finds him. Well, what we're saying is that if he's been in continuous custody and unable to leave, when we look at this Court's decisions in Ayala and in Cruz Gramajo, what this Court has said is the defendant, if he's come here illegally, he can always avoid being found in the United States and avoid being convicted of that crime by simply leaving. However, here, when the defendant has been arrested and is in continuous custody, is not in a position to be able to leave. I think you make an interesting point there, and I can see where it could be highly relevant in a statute of limitations situation. For example, if the person sneaks across the border and is continuously committing the 1326 crime between date one and date two, then he's in custody from date two to date three when the INS finds him. I can see where your argument would really matter if date two was more than five years ago. But where that's not the case, as it is not here, I can't see why it matters. Well, for statute of limitation period, I think what this Court's case law is clear. Then the date is told it is a continuing offense. So for purposes of statute of limitations, I think the law is clear. The law is not so clear when it comes to assessing the recency points. He was – the issue is whether he was under another sentence at the time he was – You're talking about whether he was found, basically? At the time he was found. Doesn't United States v. Ortiz-Villegas answer that question? That notwithstanding the fact that he was already in custody, not free to leave, that when the Immigration Service found him with the – rather, the criminal officials, that that was all that was necessary. Doesn't Ortiz-Villegas take care of that problem? Your Honor, again, we're not disputing the issue of whether he can be convicted of the crime. The issue is specifically with respect to assessment of recency points under the sentencing guidelines under 4A1.1a. Here, the case law, in fact, is not clear. In Judge Pregerson's concurring and dissenting opinion in Cruz-Gramajo, he, in fact, addressed this issue. This issue came up in Cruz-Gramajo. The majority determined that it wasn't necessary to reach the issue because of Appellant Cruz-Gramajo, it would not have affected his sentence as far as the majority was concerned, so it didn't reach the issue. Judge Pregerson, however, in his concurring and dissenting opinion, determined, in fact, to reach the issue. What authority, what binding authority does a concurring and dissenting opinion have, other than the compelling nature of the reasoning? Well, that – it certainly doesn't have any controlling authority, Your Honor. Right. But there is – our position is there, in fact, is no controlling authority when it comes to this particular question. And what the – When I was puzzling this issue, it seems to me that in the great majority of the cases where you have a finding of found, it's because the individual was found in prison. That's where they find them. If we were to rule as you would have us, it would make a major difference in how the law has been interpreted up to this time, as far as I can tell. With respect, Judge Fletcher, I disagree. I don't think if we're – what we're limiting this issue here is with respect just to assessment of recency points under 4A1.1a. We're not saying that this changes the entire law that this Court has clearly held with respect to the statute of limitations issue and the like. But what – Counsel, counsel, I understand that, and it's a good point. You're not disputing the conviction, just the adjustment. However, even though we have not ruled on it, the Fifth – am I correct that the Fifth and Eleventh Circuits have both gone against you and no circuit has gone for you on this argument? Your Honor, I'm not – I don't believe that's the case on this particular point. Again, the case law has not been entirely clear. There's certainly been some general statements in many cases. I'll study them a lot more closely. My superficial impression is that the Fifth and Eleventh Circuits in a case called Santana-Castellano and also Kerr have ruled that if it's a 1326, the adjustment applies if the alien was incarcerated when found. It may be, Your Honor. I'm not familiar with those particular two cases. And you also have the analogous, somewhat analogous situation from our circuit, the First and the Tenth Circuit that have held when a Section 1326 defendant is on probation or parole when he or she is found, the enhancements can apply. That's true. The difference, however, is when an individual is on probation or parole, he's not actually physically in custody. What's the difference for purposes of 1326? Why should that be a controlling factor? Well, because what this Court said in Ayala is that the defendant can simply leave to avoid the prosecution. He can leave the country. But he had to be here in the first place to be prosecuted and incarcerated, right? He had to have been off the ground. They didn't go into, I don't know what country this is, but they didn't go into Mexico and look for him and incarcerate him, right? That's correct. Okay. So if it was his predicate act that put him in custody in the first place, from a policy perspective, why aren't the Fifth and the Eleventh Circuit correct? I find the same cases that Judge Feinfeld had. This is a very interesting client you have. He's been deported four times. I believe that's correct. Right. And he is scheduled for release in August of this year. So if we were theoretically to agree with you and send it back for resentencing, probably it wouldn't make any difference in his life. Your Honor, I believe that when I last checked the BOP website, his release date was indicated as October 3rd. Again, yes, what we're dealing with here, since we're dealing with a binding sentence, we're talking about a difference of seven months. If I were in custody, I wouldn't want to spend an additional day I'm in custody if I didn't have to. So, yes, that makes a difference. Also, it could make a difference in terms of, if it went back to resentencing, any supervised release term under the new law. The Court doesn't have to impose a term. Is he planning to revisit this after he's deported? He indicated that he would not. His wife, in fact, lives in Mexico now, and that, in fact, he would like to return to Mexico to be with his wife. Okay. Do you want to save any time for rebuttal? I will, Your Honor. Thank you. Okay. Very well. We'll hear from Mr. Kerman for the government. Good morning, Your Honor. May it please the Court. David Kerman on behalf of the United States. The area of this case that has received somewhat of a gloss that I think is the critical issue here is the plain language of the guideline and the plain language of the statute and this Court's interpretation of that statute. The plain language of the guideline requires the Court to enhance a defendant's criminal history by two points if he committed the instant offense while under a criminal justice sentence. And Application Note 4 to the guideline also states that that relates to any part of the conduct, including possible relevant conduct. Now, turning to the founding date, which is the operative date for the purposes of 1326A, this Court has held numerous times that the crime of being found in the United States is a continuing offense and it only ends when the defendant is found by an immigration official. Taking those two statutes together and applying them to the undisputed facts of this case, the two points plainly apply to the defendant because he was found in the United States while he was under a criminal justice sentence. You agree that the Fifth and the Eleventh Circuit have already agreed with you on this point? Yes, Your Honor. And you're asking us to adopt the reasoning of those cases for purposes of Ninth Circuit jurisprudence. I do, Your Honor. And I would also direct the Court to a First Circuit case, United States v. Figueroa, 404F3D537, a Seventh Circuit case, United States v. Cano-Rodriguez, 552F3D637, and a Tenth Circuit case, United States v. Fernandez-Noriega, 544F3D. So if we were to adopt the position that Mr. Libby is advocating, it would create a circuit split, something we're used to doing around here, but probably it's discouraged. Absolutely, Your Honor. I would also contradict two unpublished decisions in this Court. Understand that that's not binding authority, but for the same reasons that the Out-of-Circuit cases are persuasive, the government would urge the Court to adopt the reasoning of those cases. And those cases are United States v. Villanova-Mendoza, 411F55, and United States v. Ceja-Rodriguez, 385F653. With respect to the logic argument that he was in custody and he was unable to leave, this Court has already twice rejected that logic in analogous circumstances. And as the Court pointed out in the Ortiz-Villegas case, which is a 2003 case, and in the context of venue in the Salazar-Robles case, which is 207F3D648. So the reasoning has been rejected twice. And in addition to these legal arguments, Your Honors, there's the point that the defendant in this case actually admitted to the found-in date in his plea agreement. And this is the found-in date that the Court used to apply the sentences. And the government believes that with that admission that this argument should be waived. And finally, Your Honors, the defendant in this case is essentially urging the Court to adopt an atextual interpretation of this guideline. And there's really no reason to do so. To the extent that the defendant in this case or in any other case may think that the application of the two points is unfair, he is free to make those arguments under United States v. Booker. To the extent that he believes the guideline itself is unfair, as has recently been done with Section 4A1.1e, they could petition the Sentencing Commission to change it, or Congress can be petitioned to change the elements of the offense. But there's no reason in this case to read the two points and the guideline atextually. And unless the Court has any questions, the government would submit. Kennedy. Any questions from my colleagues? No. Thank you very much for your argument. Mr. Levy, do you want to use some of your time for rebuttal? I would. Thank you, Your Honor. Your Honor, the fact that 1326 is a continuum offense is a legal fiction which was created by the Court. It's not as if Congress, in fact, indicated that this was a continuum offense. This is simply something that we're dealing with. I don't know about that. It says at any time found in. That's right, which the Court has interpreted to mean that it – well, no. That's true. But what the Court's have – what we're dealing with here is not when he's found in because clearly Mr. Reyes was found when he was arrested. He was found. I don't think there can be any question. He was found. I realize this is settled against you by authority, but it seems to me your interpretation of found in, what if he's found by his sister-in-law? Well, do we count that as found in? Certainly not. But he was found by – Why isn't the State authority just like his sister-in-law? Your Honor, he was found by law enforcement. He was in custody. There's law enforcement and then there's law enforcement, a lot of different kinds. Your Honor – National Park Service finds him littering in Yosemite. If he's taken into custody and is in then continuous custody and unable to leave the country, then yes, he has been found and he cannot then leave. He's not then here voluntarily. He's here because he's been – He hasn't necessarily been identified as an alien when he is found by the State officer. Your Honor, it's not clear from the record. I reviewed the A file this morning. According to the A file, there was an INS detainer that was in place and was in place from the time that he was taken into custody. So local law enforcement officials were certainly aware that there was an immigration hold on him. Did you agree, though, that you've got a whole bunch of circuits that have already ruled against your position, right, and there are none that have ruled in favor of your position? That's true. I did want to mention one case from this circuit that I think does support us, Pacheco Medina, in which this Court said that if an individual, even if he has crossed the border and is actually physically in this country, he still cannot be convicted of the crime of illegal reentry if he is under official restraint from the moment he has entered the country. And what we're dealing with here, of course, is once he's been found by law enforcement and is in continuous custody, he's under official restraint. Very good. I think we have your argument. Thank you, both gentlemen. And the case of United States v. Reyes-Ceja is submitted. We will now hear argument in the case of Wood v. City of San Diego.
judges: Fletcher, Kleinfeld, Smith